IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JULIO PANIAGUA**, on behalf of himself and all other employees similarly situated, known and unknown,<br><br>Plaintiff,<br>v.<br><br>**GUY'S DRUM SERVICE, INC.**, an Illinois corporation, **SHARON VARADI**, individually, and **CAROL MARHSALL**, individually,<br><br>Defendants. | Civil Action<br><br><br><br>No.<br><br><br><br><br><br>JURY DEMAND |

## COMPLAINT

By and through his attorneys of record and on behalf of himself and all other similarly situated employees, known and unknown, the plaintiff, JULIO PANIAGUA (the "Plaintiff"), hereby complains of the defendants, GUY'S DRUM SERVICE, INC., Illinois company, SHARON VARADI, individually, and CAROL MARSHALL, individually, (collectively the "Defendants"). Pleading hypothetically and in the alternative, the Plaintiff alleges as follows:

I. **INTRODUCTION**

1. This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as a result of the Defendants' failure to pay the Plaintiff and other similarly situated employees of the Defendants (the "Collective Class") time and one-half compensation for the overtime (in excess of 40 in any given week) hours they worked. In Count I, the Plaintiff brings a claim pursuant to Section 216(b) of the FLSA.

2. In Counts II and III, the Plaintiff brings supplemental claims pursuant to the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, and the Chicago Minimum Wage Ordinance ("CMWO"), Chicago Municipal Code (Ill.) § 1-24-010 *et seq*.

3. In Count IV, the Plaintiff brings a supplemental claim for common law conversion.

## II. THE PARTIES

4. The Plaintiff is an individual domiciled in the State of Illinois, and resides within this judicial district.

5. The following defendants are individuals who are domiciled in Illinois and reside within the Northern District of Illinois: a) SHARON VARADI; and b) CAROL MARSHALL.

6. At all times relevant to this action, GUY'S DRUM SERVICE, INC. is/was an Illinois corporation that maintains/maintained its registered office at or near 14941 Suffolk Ct., Homer Glen, IL 60491.

7. At all times relevant to this action, GUY'S DRUM SERVICE, INC. is/was an Illinois corporation that maintains/maintained its principal place of business at or near 3738 S. May St., Chicago, IL 60609.

8. At all times relevant to this action, the following defendants are/were corporate officers of GUY'S DRUM SERVICE, INC.: a) SHARON VARADI; and b) CAROL MARSHALL.

9. Upon information and belief, at all times relevant to this action, the following defendants hold/held an ownership interest in GUY'S DRUM SERVICE, INC.: a) SHARON VARADI; and b) CAROL MARSHALL.

10. Upon information and belief, at all times relevant to this action, the following defendants exercise/exercised significant control over GUY'S DRUM SERVICE, INC. day-to-day operations: a) SHARON VARADI; and b) CAROL MARSHALL.

11. At all times relevant to this action, the following defendants are/were managers at GUY'S DRUM SERVICE, INC., and have/had the power to hire and fire ECOMONY CONSTRUCTION, INC.'s employees, including the Plaintiff: a) SHARON VARADI; and b) CAROL MARSHALL.

12. At all times relevant to this action, the following defendants have/had the power to set the work schedules of ECOMONY CONSTRUCTION, INC.'s employees, including the Plaintiff; a) SHARON VARADI; and b) CAROL MARSHALL.

13. At all times relevant to this action, the following defendants have/had the power to set the pay rates of ECOMONY CONSTRUCTION, INC.'s employees, including the Plaintiff: a) SHARON VARADI; and b) CAROL MARSHALL.

14. At all times relevant to this action, the following defendants have/had the power to set the manner and method by which ECOMONY CONSTRUCTION, INC.'s employees are/were paid (*e.g.*, by check, in cash, by the hour, on salary, etc.), including the Plaintiff: a) SHARON VARADI; and b) CAROL MARSHALL.

III. <u>JURISDICTION AND VENUE</u>

15. Federal question jurisdiction is conferred on this Court by Section 16(b) of the FLSA and 28 U.S.C. §1331.

16. Supplemental jurisdiction over the Illinois statutory claims alleged herein is conferred on this Court by 28 U.S.C. § 1367(a).

17. Venue is proper as the acts or omissions that gave rise to the claims alleged herein occurred within this judicial district.

18. Further, venue is proper pursuant to 28 U.S.C. § 1391, as GUY'S DRUM SERVICE, INC. has its registered office at or near 14941 Suffolk Ct., Homer Glen, IL 60491, and its principal place of business at or near 3738 S. May St., Chicago, IL 60609.

## IV. COLLECTIVE ACTION UNDER THE FLSA

19. The Plaintiff brings this case as a Collective action under the FLSA on behalf of himself and the Collective Class, and in accord with Section 16(b) of the FLSA, the Plaintiff has given written consent to bring such an action (attached as **Exhibit A**).

## V. GENERAL ALLEGATIONS

20. At all times relevant to this action, the Defendants, and each of them, were the Plaintiff's "employer" within the meaning of Section 3(a) and (d) of the FLSA in that the Defendants act/acted directly or indirectly in the interest of the "employer" in relation to the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

21. At all times relevant to this action, the Defendants, and each of them, were the Plaintiff's "employer" within the meaning of Section 3(c) of the IMWL in that the Defendants acted directly or indirectly in the interest of the "employer" in relation to the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

22. At all times relevant to this action, the Plaintiff was an "employee" of the Defendants within the meaning of Section 3(e)(1) of the FLSA.

23. At all times relevant to this action, the members of the Collective Class are/were "employees" of the Defendants within the meaning of Section 3(e)(1) of the FLSA.

24. At all times relevant to this action, the Plaintiff was an "employee" of the Defendants within the meaning of Section 3(d) of the IMWL.

25. At all times relevant to this action, the Defendants operated, and continue to operate, a recycling business commonly known as "Guy's Drum Service" which maintains its principal place of business at or near 3738 S. May St., Chicago, IL 60609.

26. GUY'S DRUM SERVICE, INC. had gross receipts in excess of $500,000.00 in: a) 2010; b) 2011; c) 2012; d) 2013; e) 2014; f) 2015; g) the twelve-month period between and including April 1, 2015 and March 31, 2016; and h) the twelve-month period between and including July 1, 2015 and June 30, 2016.

27. In addition to the business commonly known as Guy's Drum Service, one or more of the Defendants operate other related businesses in Illinois, including but not limited to Greenway Recycling Transportation Services, Inc.[1]

28. The Defendants characterize their business as a family business[2] and, upon information and belief, at all times relevant to this action one or more of the following

---

[1] As of July 30, 2016, SHARON VARADI's LinkedIn page says that she has been an owner of "Guys Drum Services Inc. / Greenway Recycling Transportation" for 25 years and 11 months.

[2] As of July 30, 2016, SHARON VARADI's LinkedIn page says that GUY'S DRUM SERVICE, INC. has been "Family owned and operated for well over 100 years." As of June, 2016, SHARON VARADI and Josephine Kirby were the registered co-owners of a 2004 Lincoln Town Car bearing the Illinois license plates "GUYKIRK" and being registered to 14941 Suffolk Ct., Homer Glen, IL 60491, the registered office of GUY'S DRUM SERVICE, INC. As of August, 2015, SHARON VARADI and Dennis Halleran were the registered co-owners of a 2006 BMW 330i bearing the Illinois license plates "9201505" and being registered to 14941 Suffolk Ct., Homer Glen, IL 60491, the registered office of GUY'S DRUM SERVICE, INC.

individuals have/had an ownership interest in GUY'S DRUM SERVICE, INC. or in the Defendants' related businesses: a) Gerald Kirby; b) G. K. Kirby; c) James Kirby; d) Marcie Kirby; e) Marcie Jo Kirby; f) Dennis Halleran; g) Joseph Halleran; h) John Murphy; i) Wilbur Kirk; k) Josephine J. Kirk; l) Josephine Kirby; and m) Wallace Kirby.

29. Upon information and belief, at all times relevant to this action one or more of the following individuals have/had operational control of GUY'S DRUM SERVICE, INC. or of the Defendants' related businesses: a) Gerald Kirby; b) G. K. Kirby; c) James Kirby; d) Marcie Kirby; e) Marcie Jo Kirby; f) Dennis Halleran; g) Joseph Halleran; h) John Murphy; i) Wilbur Kirk; k) Josephine J. Kirk; l) Josephine Kirby; and m) Wallace Kirby.

30. SHARON VARADI has in the past used the names "Sharon Kirby" and "Sharon Murphy."

31. SHARON VARADI is listed in the Illinois Secretary of State's corporation database as the president of GUY's DRUM SERVICE, INC.; and CAROLL MARSHALL is listed in the same database as the corporate secretary of GUY's DRUM SERVICE, INC.

32. SHARON VARADI and CAROL MARSHALL are female.

33. During the course of his employment, the Plaintiff observed that several males (whom the Plaintiff believed to be related to one another) had on several occasions identified themselves as the "owners" of GUY'S DRUM SERVICE, INC. The Plaintiff, who is not a native speaker of English, does not presently recall their names however.

34. Upon information and belief, GUY'S DRUM SERVICE, INC. is owned and controlled by a group of family members that includes individuals other than SHARON VARADI and CAROL MARSHALL; and, upon information and belief, GUY'S DRUM SERVICE, INC. lists SHARON VARADI as its president, and CAROL MARSHALL as its corporate

secretary, only in order to obtain certain benefits associated with being a woman-owned business.

35. During the course of his employment by the Defendants, the Plaintiff handled goods that moved in interstate commerce including but not limited to 55-gallon drums and other containers, degreaser and other cleaning solvents, metal fasteners, gloves and protective eyewear.

36. During the course of their employment by the Defendants, the Collective Class handled/handles goods that moved in interstate commerce including but not limited to 55-gallon drums and other containers, degreaser and other cleaning solvents, metal fasteners, gloves and protective eyewear.

37. During the course of their employment by the Defendants, the Plaintiff and the Collective Class were/are not exempt from the overtime wage and minimum wage provisions of the FLSA.

38. During the course of their employment by the Defendants, the Plaintiff and was not exempt from the overtime wage and minimum wage provisions of the IMWL.

39. The Plaintiff was employed by the Defendants from about January, 2001, until about February 14, 2016.

40. During the course of his employment by the Defendants, the Plaintiff worked at or near 3738 S. May St., Chicago, IL 60609.

41. During the course of his employment, the Defendants allowed the Plaintiff worked between 44 and 46 hours each week.

42. During the course of his employment, however, the Defendants only paid the Plaintiff for 40 hours of work each week.

43. For example, in the last several years of his employment, the Defendants paid the Plaintiff for 40 hours each week at the Illinois minimum wage of $8.25 per hour ($330.00 gross per week); and this is true even though the Plaintiff routinely worked at least 44, and as many as 46, hours per week for the Defendants.

44. Because the Defendants paid the Plaintiff at the Illinois minimum rate for 40 hours each week (less than the 44-46 hours he actually worked) the Defendants could not have paid the Plaintiff overtime compensation at the required time and one-half rate.

45. Additionally, the Defendants' improper payroll practices caused the Plaintiff's compensation to fall below the federal, Illinois and Chicago minimum wage rates ($330.00 / 44 = $7.50; $330.00 / 46 = $7.17)[3].

46. During the course of his employment by the Defendants, the Plaintiff cleaned and refurbished 55-gallon drums and other containers; and the Defendants employed, and continue to employ, about 10 other individuals in the same position (the Collective Class members).

47. Like the Plaintiff, the Defendants allowed the Collective Class members to work between 44 and 46 hours per week and, upon information and belief, they continue this practice through the present day.

48. During the course of the Plaintiff's employment by the Defendants, the Defendants paid the Plaintiff and the Collective Class members in cash. Specifically, the Defendants would give the Plaintiff and the Collective Class members checks for their labor, but the Defendants would then cash the checks for them.

---

[3] Since June 24, 2009, the federal minimum wage has been $7.25/hour, since July 1, 2010, the Illinois minimum wage has been $8.25/hour and since July 1, 2015, the Chicago minimum wage has been $10.00/hour.

49. The Defendants engaged in the payroll practice described above in order to further their goal of avoiding the payment of overtime compensation to the Plaintiff and the Collective Class members and to avoid leaving a "paper trail."[4]

50. During the course of his employment by the Defendants, the Plaintiff observed Collective Class members who had worked the same schedule as he did being paid the same amount of money that he was each week.

51. The Defendants failed and refused to pay the Collective Class members at rates not less than one and one-half times their respective, regular hourly rates for the overtime (in excess of 40 in any given week) hours that they worked.

52. The Defendants failed and refused to pay the Collective Class members at rates not less than the federal, Illinois and Chicago minimum wage rates.

53. Upon information and belief, the Defendants continue the practice of failing to pay overtime compensation to the Collective Class members through the present day; and, upon information and belief, the Defendants continue the practice of failing to pay the Collective Class members at rates not less than the federal, Illinois and Chicago minimum wage rates through the present day.

### COUNT I
### (Violation of the FLSA)

54. The Plaintiff re-alleges the foregoing paragraphs.

55. Among other ways, the Defendants violated the FLSA by:

   a. failing to pay the Plaintiff at a rate not less than one and one-half times his regular hourly rate for the overtime hours he worked;

---

[4] The Plaintiff believes the Defendants' records will likely indicate that he worked 40 hours each week, even though he worked at least 44, and often as many as 46, hours per week.

    b. failing to pay the Plaintiff at a rate not less than the federal minimum wage;

    c. failing to provide the Plaintiff with pay stubs that accurately listed his hourly wage rate and the number of hours he worked each week; and

    d. failing to accurately record the number of hours that he worked each week.

56. Among other ways, the Defendants also violated the FLSA by:

    a. failing to pay the Collective Class members at rates not less than one and one-half times their respective, regular hourly rates for the overtime hours they worked;

    b. failing to pay the Collective Class members at a rate not less than the federal minimum wage;

    c. upon information and belief, failing to provide the Collective Class members with pay stubs that accurately list/listed their respective hourly wage rates and the number of hours they work/worked each week; and

    d. upon information and belief, failing to accurately record the number of hours that the Collective Class members work/worked each week.

57. The Defendants' violation of the FLSA was willful in that the Defendants were aware or should have been aware of their obligations under the FLSA, but nevertheless attempted to circumvent its provisions.

58. The Defendants failed to take affirmative steps to ascertain their obligations under the FLSA.

WHEREFORE the Plaintiff, on behalf of himself and the Collective Class, prays for judgment in his favor and against the Defendants, and each of them, and for the following relief:

    A. damages in an amount equal to the unpaid overtime compensation due and owing to the plaintiffs for each hour the plaintiffs worked in excess of 40 in any given week, but for which the Defendants failed to pay the plaintiffs at rates not

    less than one and one-half times their respective regular, hourly rates (in no case less than one and one-half times the IMWL's mandatory minimum rate);

B. damages in an amount equal to the unpaid minimum wages due and owing to the plaintiffs for each hour the plaintiffs worked, but for which the Defendants failed to pay the plaintiffs at rates not less than the federal minimum wage;

C. statutory liquidated damages as allowed by the FLSA;

D. interest on all amounts awarded;

E. attorneys' fees, together with costs of suit and collection; and

F. such further relief as may be fair and just in the premises.

## COUNT II
### (Violation of the IMWL)

59. The Plaintiff re-alleges the foregoing paragraphs.

60. Among other ways, the Defendants violated the IMWL by:

    a. failing to pay the Plaintiff at a rate not less than one and one-half times his regular hourly rate for the overtime hours he worked;

    b. failing to pay the Plaintiff at a rate not less than the IMWL's mandatory minimum rate;

    c. failing to provide the Plaintiff with pay stubs that accurately listed his hourly wage rate and the number of hours he worked each week; and

    d. failing to accurately record the number of hours that he worked each week.

61. The Defendants were aware or should have been aware of their obligations under the IMWL, but nevertheless attempted to circumvent its provisions.

62. The Defendants failed to take affirmative steps to ascertain their obligations under the IMWL.

WHEREFORE the Plaintiff prays for judgment in his favor and against the Defendants, and each of them, and for the following relief:

A. damages in an amount equal to the unpaid overtime compensation due and owing to the Plaintiff for each hour the Plaintiff worked in excess of 40 in any given week, but for which the Defendants failed to pay the Plaintiff at a rate not less than one and one-half times his regular, hourly rate (in no case less than one and one-half times the IMWL's mandatory minimum rate);

B. damages in an amount equal to the unpaid minimum wages due and owing to the Plaintiff for each hour the Plaintiff worked, but for which the Defendants failed to pay the Plaintiffs at a rate not less than the IMWL's mandatory minimum rate;

C. statutory punitive damages as allowed by the IMWL;

D. interest on all amounts awarded;

E. attorneys' fees, together with costs of suit and collection; and

F. such further relief as may be fair and just in the premises.

## COUNT III
### (Violation of the CMWO)

63. The Plaintiff re-alleges the foregoing allegations.

64. Among other ways, the Defendants violated the CMWO by:

   a. failing to pay the Plaintiff at a rate not less than one and one-half times his regular hourly rate for the overtime hours he worked;

   b. failing to pay the Plaintiff at a rate not less than the CMWO's mandatory minimum rate;

   c. failing to provide the Plaintiff with pay stubs that accurately listed his hourly wage rate and the number of hours he worked each week; and

   d. failing to accurately record the number of hours that he worked each week.

65. The Defendants were aware or should have been aware of their obligations under the CMWO, but nevertheless attempted to circumvent its provisions.

66. The Defendants failed to take affirmative steps to ascertain their obligations under the CMWO.

WHEREFORE the Plaintiff prays for judgment in his favor and against the Defendants, and each of them, and for the following relief:

A. damages in an amount equal to the unpaid overtime compensation due and owing to the Plaintiff for each hour the Plaintiff worked in excess of 40 in any given week, but for which the Defendants failed to pay the Plaintiff at a rate not less than one and one-half times his regular, hourly rate (in no case less than one and one-half times the CMWO's mandatory minimum rate);

B. damages in an amount equal to the unpaid minimum wages due and owing to the Plaintiff for each hour the Plaintiff worked, but for which the Defendants failed to pay the Plaintiffs at a rate not less than the CMWO's mandatory minimum rate;

C. statutory punitive damages as allowed by the CMWO;

D. interest on all amounts awarded;

E. attorneys' fees, together with costs of suit and collection; and

F. such further relief as may be fair and just in the premises.

## COUNT IV
### (Conversion)

67. The Plaintiff re-alleges the foregoing paragraphs.

68. The Defendants withheld money from the paychecks of the Plaintiff and the Collective Class members as and for payroll taxes.

69. Specifically, the Defendants withheld about $73.00 per week from the Plaintiff's paycheck.

70. However, the Defendants did not provide the Plaintiff with an IRS Form W-2 in most, in not all, of the approximately 15 years he was employed.

71. Upon information and belief, the Defendants failed to pay the money they withheld from the Plaintiff's payroll checks each week to the IRS, to the Illinois Department

of Revenue or to any other taxing authority in most, if not all, of the weeks that the Plaintiff was employed

72. Instead, upon information and belief, the Defendants converted the money they claimed to have withheld from the Plaintiff's payroll checks as and for payroll taxes to their own use.

73. At the moment (or moments) when the Defendants failed to pay all of the money they had withheld from the Plaintiff's paychecks to the IRS and other taxing authorities and kept the difference for themselves (presumably this occurred quarterly), the Plaintiff had, and still has, an immediate right to possess the money that was withheld.

74. At the moment (or moments) when the Defendants failed to pay all of the money they had withheld from the Plaintiff's paychecks to the IRS and other taxing authorities, the Defendants converted the money that was withheld to their own use.

75. As a direct and proximate result of the Defendant's actions the Plaintiff was damaged in that he suffered pecuniary loss.

WHEREFORE the Plaintiff prays for judgment in his favor and against the Defendants, and each of them, and for the following relief:

    A. compensatory damages;

    B. consequential damages;

    C. punitive damages;

    D. pre-judgment and post-judgment interest on all amounts awarded; and

    E. such further relief as may be fair and just in the premises.

## JURY DEMAND

The Plaintiff demands a trial by jury of all issues set forth herein that are capable of being tried by a jury.

                                             Respectfully submitted,

                                             /s/Paul Luka
                                             One of the Plaintiff's Attorneys

Paul Luka
LAW OFFICE OF PAUL LUKA, P.C.
120 S. State Street, Suite 400
Chicago, IL 60603
(312) 971-7309
paul@lukapc.com

# EXHIBIT A

## CONSENT TO BE A PARTY PLAINTIFF

The undersigned hereby authorizes and engages the Law Office of Paul Luka, P.C., to pursue his/her claims for unpaid wages, and other relief, against Guys Drum Service, Inc., Sharon Varadi, and any other person/s who may have employed him/her in conjunction with said person/s (collectively the "Employers"), and by the signature below the undersigned hereby consents to be a party plaintiff in a lawsuit brought against the Employers on behalf of him/herself and all other similarly situated employees, known and unknown, pursuant to 29 U.S.C. 216(b).

_Julio paniagua_
Signature

JULIO PANIAGA
Print Name